UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10753-GAO

REVOLUTIONS MEDICAL CORPORATION,
Petitioner

v.

MEDICAL INVESTMENT GROUP LLC, STRATEGIC PRODUCT DEVELOPMENT, INC., RINK DEVELOPMENT CO. LLC, ICE HUTS INC., RICHARD H. THERIAULT, VITA S. THERIAULT, DARIUS R. THERIAULT, RAMINDA THERIAULT, JOHN GANICK, BREAKAWAY HOCKEY DEK & SPORTS, and JOHN DOES 1-10,
Respondents

ORDER ONREPORT AND RECOMMENDATION
March 13, 2013

The magistrate judge to whom this matter was referred has filed a report and recommendation ("R&R") with respect to the petitioner's Motion for a Preliminary Injunction (dkt. no. 2) and the respondents' Motions to Provide Lien on Assets (dkt. nos. 30 & 35). Petitioner filed objections to the report.

These motions arise out of the breach of an Amended Manufacture, Supply, Distribution and Licensing Agreement between petitioner and respondent Medical Investment Group, LLC ("MIG"). The parties arbitrated their dispute in South Carolina pursuant to this agreement. During the discovery phase, petitioner discovered various transactions and loans involving respondent Richard Theriault and the multiple corporations that he owns. In response to these discoveries, petitioner filed this action in aid of arbitration. Since that time, the arbitrators have decided in favor of the petitioner against MIG and Richard Theriault, finding a breach of the contract and fraud in the inducement. The arbitrators awarded petitioner damages in the sum of $770,000 plus interest.

Petitioner has moved for a preliminary injunction to enjoin the transfer or disposition of any monies held by, or for the benefit of the named defendants. Petitioner also requests a full accounting of all funds paid to MIG during the pendency of the agreement so that it may identify and pursue those funds. This motion is properly considered as a "freeze assets" motion, which may be granted as a preliminary injunction. See Charlesbank Equity Fund II, Ltd. P'ship v. Blinds to Go, Inc., 370 F.3d 151, 157 (1st Cir. 2004).

After carefully reviewing the pleadings, the parties' motion papers, and the R&R, I agree generally with the conclusions reached by the magistrate judge with respect to the individual defendants other than Richard Theriault and with respect to the corporate defendants other than MIG. Therefore, I agree with and adopt her conclusion that the requested relief should not be granted as to those parties. I also agree that the respondents' motions should be denied without prejudice. However, the magistrate judge did not have the benefit of the final arbitration award in the petitioner's favor against MIG and Theriault personally. In light of the award, an injunction restraining those two parties against alienation of property or assets is appropriate.

Accordingly, the petitioner's motion for a preliminary injunction is DENIED IN PART and GRANTED IN PART, and it is ORDERED that the respondents Medical Investment Group LLC and Richard H. Theriault are enjoined and restrained from transferring or alienating any property or assets in their possession without prior approval of this Court pending further order. Those respondents shall also serve upon the petitioner a true and complete statement of the assets and property possessed by each of them within 35 days of the entry of this order.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REVOLUTIONS MEDICAL CORPORATION,

Petitioner,

v.

MEDICAL INVESTMENT GROUP LLC, et al.

Respondents.

Civil Action No. 12-10753-GAO

**REPORT AND RECOMMENDATION**
[Docket Nos. 2, 30, 35]

November 7, 2012

Boal, M.J.

Petitioner Revolutions Medical Corporation ("RMC") moved for a preliminary injunction enjoining the transfer or disposition of any monies held by, or for the benefit of, all of the respondents (except Breakaway Hockey Dek & Sports) without court approval. Docket No. 2. Respondents Richard Theriault, Vita Theriault and Ice Huts Development Company LLC moved for an order approving an attachment on certain assets in lieu of RMC's request for injunctive relief. Docket Nos. 30, 35. For the following reasons, this Court recommends to the District Judge to whom this case is assigned that RMC's motion for a preliminary injunction be DENIED and Respondents Richard Theriault, Vita Theriault and Ice Huts Development's motions to provide a lien on assets sufficient to provide security be DENIED without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties[1]

RMC is a South Carolina corporation in the business of developing medical devices. Petition for Injunctive Relief ("Petition") ¶ 2. RMC holds patents on auto-retractable safety syringes. Id.

Medical Investment Group, Inc. ("MIG") is a closely held Massachusetts corporation owned by defendant Richard Theriault ("Theriault"). Petition ¶¶ 4, 8. Theriault is also an owner, officer, director, or employee of defendants Strategic Product Development, Inc. ("SPD"), Rink Development Company, LLC ("Rink"), Ice Huts, Inc. ("Ice Huts"), and Ice Huts Development, Inc. ("Ice Huts Development"). Petition ¶ 8 and Ex. A thereto.

Defendant Vita S. Theriault, Theriault's wife, is the bookkeeper, owner, officer, director or employee of SPD, MIG, Rink, Ice Huts and Ice Huts Development. Petition ¶ 9 and Ex. A thereto. Theriault's children, defendants Darius T. Theriault and Raminda Theriault, are also owners, officers, directors, or employees of SPD, MIG, Rink, Ice Huts and Ice Huts Development. Petition ¶¶ 10-11 and Ex. A thereto.

Defendant John Ganick is the Secretary of SPD. Petition ¶ 12 and Ex. A thereto. Defendant Break Away Hockey Dek & Sports ("Break Away") is a tenant of Ice Huts, Ice Huts Development, or Rink. Petition ¶ 14.

---

[1] As will be discussed more fully below, RMC has not provided evidentiary support for several of its allegations. To carry its burden, RMC must offer proof beyond unverified allegations in the pleadings. Strahan v. Roughead, No. 08-cv-10919-MLW, 2010 WL 4827880, at *10 (D. Mass. Nov. 22, 2010) (citing Palmer v. Braun, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001)); see also Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2949 (2d. ed. 1995). Whenever possible, the Court sets out the facts as supported by affidavit and exhibits.

B. The Agreement And RMC's Position

On or around January 6, 2011, RMC entered into an Amended Manufacture, Supply, Distribution and Licensing Agreement (the "Agreement") with MIG. Petition, ¶ 15 and Ex. A to Deitch Aff.[2] Pursuant to the Agreement, MIG agreed to manufacture RMC's syringes in China. RMC maintains that MIG was formed by Theriault for the purpose of manufacturing the syringes under the Agreement. Mem. at 2.[3]

Prior to entering into the Agreement, RMC contracted with SPD to locate suitable manufacturers for RMC's syringes. Mem. at 2.

RMC entered into the Agreement based upon Theriault's allegedly false representations that he had special skill and expertise in manufacturing medical products in China and that he had investors willing to contribute $1.2 million towards the development of the manufacturing of syringes in China. Wheet Aff. ¶¶ 3-4.[4] Relying on Theriault's representations, RMC paid $806,650 to MIG under the Agreement. Wheet Aff. ¶ 11 and Ex. 6 thereto. Throughout the course of the relationship between RMC and MIG, Theriault continually wrote to RMC, falsely advising it that his companies were production ready and that his investors were demanding performance from RMC. Petition, ¶ 21.

Under the Agreement, MIG was, among other things, to meet minimum standing orders of 2.5 million 3mL syringes per month by May 17, 2011. According to RMC, MIG was never

[2] "Deitch Aff." refers to the Declaration of John M. Deitch, Esq. in Support of Plaintiff's Motion for Injunctive Relief. (Docket No. 4).

[3] "Mem." refers to the Memorandum of Law in Support of Plaintiff's Motion for Injunctive Relief. (Docket No. 3).

[4] "Wheet Aff." refers to the Declaration of Ronald Wheet in Support of Plaintiff's Motion for Injunctive Relief. (Docket No. 46).

able to meet the standing order and was declared in default. Mem. at 5; see also Wheet Aff. ¶¶ 5-6 and Ex. 2 and 3 thereto. However, MIG continuously advised RMC that it was going to be production ready and would meet its obligations. Mem. at 5. MIG sent hand-assembled samples to RMC in the Spring of 2011, but the samples had an exceedingly high failure rate and were rejected by RMC. Id.

MIG had made arrangements with manufacturers in China for the production of the syringes. Id. The Agreement allowed MIG to do so, provided that RMC gave written approval of the manufacturer. Id. In or about April 2011, RMC discovered that the manufacturer MIG had contracted with was not the manufacturer that RMC had approved. Id.

According to RMC, discussions with the manufacturer retained by MIG revealed that Theriault was not responding to their concerns and had paid it a total of approximately $40,000. Id. The manufacturer also claimed to have been assigned RMC intellectual property and asserted a right to additional charges in developing the production molds for the syringes. Id. That information came as a surprise to RMC because RMC had paid MIG over $800,000 in pre-production costs. Id. Theriault has not provided RMC with a satisfactory explanation for where the money went, nor has he ever provided an accounting of same. Id.

After providing MIG with multiple opportunities to cure its defaults under the Agreement, RMC terminated the Agreement on September 2, 2011. Mem. at 6.

C. Theriault's Position

Theriault, on the other hand, maintains that RMC failed to make required payments of

$145,000 under the Agreement. Theriault 9/28/12 Aff. ¶ 5.[5] He also maintains that RMC is currently using Yeso-Med, a Chinese manufacturer, in the production of its syringes. Theriault 9/14/12 Aff. ¶ 5.[6] Yeso-Med is the same manufacturer that Theriault had found to produce the syringe under the Agreement. Theriault 9/28/12 Aff. ¶ 4; Theriault 9/14/12 Aff. ¶ 4. Theriault believes that his work under the Agreement led to the discovery of Yeso-Med by RMC and working directly with Yeso-Med provided a less costly alternative to RMC than the Agreement. Theriault 9/14/12 Aff. ¶ 6.

D. The Arbitration

In or around late September 2011, MIG filed an arbitration claim against RMC in South Carolina pursuant to the Agreement. Petition, ¶ 24; Mem. at 6; see Agreement I(B)(10)(b)(ii). RMC counterclaimed to recover the monies it had paid to MIG for which no work was performed. Petition, ¶ 25; Mem. at 3.

During discovery, RMC discovered, inter alia:

- MIG entered into a $125,000 loan to Ice Huts or Ice Huts Development. The loan bore no interest, no term, and no obligation to be repaid. 4/16/12 Theriault Depo. at 72-77.[7] The loan proceeds were lent to Break Away, Ice Hut's tenant, so that Break Away could make improvements to the leasehold, which would inure to the

[5] "Theriault 9/28/12 Aff." refers to the September 28, 2012 Declaration of Richard Theriault in Opposition to Petitioner's Motion for Injunctive Relief. (Docket No. 58-1).

[6] "Theriault 9/14/12 Aff." refers to the September 14, 2012 Affidavit of Richard Theriault. (Docket No. 58-4).

[7] "4/16/12 Theriault Depo." refers to the transcript of the April 16, 2012 Deposition of Richard Theriault, attached as Exhibit D to the Declaration of John M. Deitch. (Docket No. 4-1).

benefit of the landlord. 4/16/12 Theriault Depo. at 77. The monies for the loan came from RMC's payments to MIG. 4/16/12 Theriault Depo. at 74.

- SPD made no interest loans to Theriault which were purportedly deferred income. Although these loans were not to be repaid, there is no evidence that payroll withholdings were made. The loans total at least $68,000. 4/16/12 Theriault Depo. at 209-211.
- MIG paid over $300,000 received from RMC to SPD under a "consulting agreement" between MIG and SPD. 4/16/12 Theriault Depo. at 43-45. This consulting agreement was nowhere memorialized. Id.
- Although SPD was supposed to receive $30,000 per month on the consulting agreement, SPD's invoices do no reflect this billing. 4/16/12 Theriault Depo. at 51-58; Ex. F to Deitch Decl.

During his deposition, Theriault also admitted that at least $265,000 paid by RMC under the Agreement was transferred to Rink for the purpose of avoiding a potential federal criminal investigation into his dealings with RMC. 4/17/12 Theriault Depo. at 280-291.[8] Rink has nothing to do with the Agreement, but money was transferred from RMC to MIG, then to SPD, then to Rink, and then back to SPD. 4/17/12 Theriault Depo. at 289-91.

During his deposition, Theriault asserted his Fifth Amendment rights against self-incrimination more than one-hundred times and then failed to appear for the next day of his continued deposition. Petition, ¶ 27; Mem. at 3. MIG then withdrew its claims from arbitration

[8] "4/17/12 Theriault Depo." refers to the transcript of the April 17, 2012 Deposition of Richard Theriault, attached as Exhibit E to the Declaration of John Deitch. (Docket No. 4-1).

with prejudice. Id. However, RMC's counterclaims survive. Petition, ¶ 28; Mem. at 3; Ex. B and C to Deitch Decl.

E. The Instant Action

On April 27, 2012, RMC filed the instant suit seeking an injunction against the defendants in aid of the arbitration. Docket No. 1. RMC also filed a motion for a preliminary injunction. Docket No. 2.

On May 7, 2012, MIG filed a Suggestion of Bankruptcy. Docket No. 9. MIG filed a Chapter 11 Petition with the United States Bankruptcy Court for the District of Massachusetts. Id. RMC filed a motion to modify the automatic stay imposed by the bankruptcy filing in the Bankruptcy Court. See Docket No. 10 at 2. On May 15, 2012, the Bankruptcy Court granted RMC's request, allowing RMC to proceed on its claims against MIG.[9] Id. at 2-7.

On June 7, 2012, Ice Huts Development moved for an order providing a lien on certain of its assets as security for RMC's claims in lieu of RMC's request for a preliminary injunction. Docket No. 30. Similarly, Theriault and his wife moved for an order providing a lien on certain of their assets as security for RMC's claims in lieu of RMC's request for a preliminary injunction. Docket No. 35. RMC filed an opposition to Ice Huts Development and the Theriault's motions on June 13, 2012. Docket No. 36.

On August 3, 2012, the District Court referred the parties' motions to the undersigned for a report and recommendation. Docket No. 43. On September 7, 2012, Respondents Ice Huts Development, Ice Huts, MIG, Rink, and SPD filed a motion for leave to file a late opposition to

[9] The Bankruptcy Court sua sponte issued an order to show cause why MIG's Bankruptcy Petition should not be dismissed on May 15, 2012. Wheet Aff. ¶ 9 and Ex. 4 thereto. On May 23, 2012, MIG voluntarily withdrew its Bankruptcy Petition. Wheet Aff. ¶ 9 and Ex. 5 thereto.

RMC's motion for a preliminary injunction, which the Court granted on September 14, 2012. Docket No. 45; Docket No. 52.

This Court heard oral argument on September 12, 2012. After oral argument, the parties submitted several supplemental filings in connection with the motions. See Docket Nos. 54-59.

## II. ANALYSIS

### A. Choice Of Law

RMC states that it believes that South Carolina law is applicable to this dispute because the Agreement dictates that South Carolina law shall apply to any dispute. Mem. at 9 n. 2. It further states that it believes that the standards utilized by the U.S. Court of Appeals for the First Circuit, the District of Massachusetts, and Massachusetts state courts in deciding whether to grant a preliminary injunction are significantly similar. Id. However, "[t]he question whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny." Baker's Aid v. Hussmann Foodservice Co., 830 F.2d 13, 15 (2nd Cir. 1987); see also Southern Milk Sales, Inc., 924 F.2d 98, 102 (6th Cir. 1991); M.B. Int'l W.W.L. v. PMI Am., Inc., No. 12 Civ. 4945, 2012 WL 3195761, at *9 (S.D.N.Y. Aug. 6, 2012). Accordingly, in its analysis, this Court will apply the standards under Rule 65 of the Federal Rules of Civil Procedure.

### B. The Court's Power To Grant The Requested Injunction

RMC requests an injunction enjoining the transfer or disposition of any monies held by, or for the benefit of, all of the Respondents absent court approval. See Docket No. 2-1. In addition, RMC requests that any payments by Break Away to Ice Huts or Ice Huts Development be paid into escrow pending further court order. Id. Finally, RMC requests a complete

accounting of all funds from RMC received by MIG so that RMC may identify and pursue those monies. Id. Accordingly, RMC's request is in the nature of a "freeze assets" order, which is properly considered a motion for a preliminary injunction.[10] Charlesbank Equity Fund II, Ltd. P'ship v. Blinds to Go, Inc., 370 F.3d 151, 157 (1st Cir. 2004). Notwithstanding the arbitrability of the parties' dispute, a federal court has the authority to grant preliminary injunctive relief to preserve the status quo pending arbitration provided that the prerequisites for granting injunctive relief are met. Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986).

Neither side raised the issue, but this Court must consider whether the District Court has the authority to issue a preliminary injunction preventing the defendants from transferring their

[10] In its September 28, 2012 supplemental memorandum, RMC argues that Rule 64 of the Federal Rules of Civil Procedure also provides authority for the issuance of the requested preliminary injunction. The Court disagrees. Rule 64 provides, in relevant part, that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). RMC seeks a freeze order to enjoin Defendants from transferring or conveying their assets. "Even though a freeze order may serve many of the same ends as an attachment, the former acts upon a party whereas the latter is directed at specific property." Charlesbank Equity Fund II, Ltd., 370 F.3d at 161. Accordingly, a freeze asset order is governed by Rule 65, not Rule 64. Id.

In addition, at oral argument, the Court specifically asked RMC's counsel whether RMC intended to rely upon Rule 64 and counsel responded in the negative. In any event, Rule 64 "allows for the grant of prejudgment security in the manner provided by the law of the state in which the district court is held." Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 33 n. 1 (1st Cir. 2005) (internal quotations omitted). In other words, Rule 64 "allows a federal court to borrow provisional remedies created by state law." Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 70 (1st Cir. 2002). Other than a conclusory statement that "[t]he relief requested in the present case is similar to a trustee process in that the defendant has admitted transferring funds obtained from the Plaintiff by fraudulent means to related entities," RMC has provided no analysis to support an entitlement to any Massachusetts state law prejudgment remedies.

assets.[11] In Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), the Supreme Court held that federal courts have "no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages" where no preexisting lien or equitable interest had been claimed. Id. at 333. The Supreme Court held that federal courts did not have the power "because such a remedy was historically unavailable from a court of equity." Id. Specifically, the Supreme Court held that federal judges have the equity jurisdiction that was exercised by the English Court of Chancery "at the time of the adoption of the Constitution and the enactment of the original Judiciary Act," and that this jurisdiction did not then, and does not now, include the equitable power to assist a general creditor by restricting a debtor's use of his unencumbered property before judgment. Id. at 318-19. "[A] general creditor (one without a judgment) ha[s] no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property" prior to obtaining a judgment. Id. at 320.

However, courts have interpreted Grupo Mexicano's holding to be restricted to actions at law where the plaintiff seeks only money damages. See, e.g., United States v. Oncology Associates, P.C., 198 F.3d 489, 496-97 (4th Cir. 1999); Westernbank Puerto Rico v. Kachkar, No. 07-1606, 2008 WL 8089778, at *5 (D.P.R. July 23, 2008); Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc., No. 00 Civ. 8051, 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000); Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 77 F. Supp. 2d 199, 202 (D. Mass.

[11] After the Court raised the issue during oral argument, the parties filed supplemental memoranda of law addressing this issue. See Docket Nos. 58-59.

1999). Accordingly, federal courts have granted orders freezing assets where the plaintiff sought both legal and equitable relief. See, e.g., id.; Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 33-34 (1st Cir. 2010) ("[A] court may, consistent with Grupo Mexicano, 'issue asset freezing injunctions in 'mixed' cases . . ., where both equitable and legal remedies are sought.'").

In the underlying arbitration, RMC brought a claim for "[b]reach of manufacturing contract leading to damages of $3,500,000." Docket 56 at 1. However, RMC also seeks rescission of the Agreement and restitution of the moneys paid thereunder. See Docket No. 56-1 at 8. "Rescission is an equitable remedy that attempts to undo a contract from the beginning as if the contract had never existed." Mortg. Elec. Sys., Inc. v. White, 682 S.E.2d 498, 502 (S.C. App. 2009) (citation omitted); see also Glasscock Co., Inc. v. Sumter County, 604 S.E.2d 718, 720 (S.C. App. 2004). Similarly, restitution is also an equitable remedy. See JASDIP Properties SC, LLC v. Estate of Richardson, 720 S.E.2d 485, 488 (S.C. App. 2011). Because RMC seeks equitable relief, this Court concludes that the District Court has the authority to issue a freeze asset order in this case.

C. Standard For Granting Preliminary Injunction

Having concluded that the District Court has the authority to issue a freeze asset injunction, the Court must now consider whether RMC has met its burden of proving entitlement to a preliminary injunction. To obtain a preliminary injunction, RMC must demonstrate (1) substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). "Likelihood of success is the main bearing wall of the

four-factor framework." Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996).

The first two factors - likelihood of success on the merits and irreparable harm - are threshold issues; a plaintiff who is unable to demonstrate either must fail in his quest for preliminary injunctive relief. United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007) ("[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.") (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)); Ross-Simmons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000) ("Irreparable harm is an essential prerequisite for a grant of injunctive relief.").

The party requesting preliminary injunctive relief bears the burden of establishing that these four factors weigh in favor of granting the injunction. Nieves-Marquez, 353 F.3d at 120. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." Bear Republic Brewing Co. v. Central City Brewing Co., 716 F.Supp.2d 134, 139 (D. Mass. 2010) (emphasis in original; citations omitted).

1. Likelihood Of Success

Plaintiff has not presented enough evidence to support a likelihood of success on the merits. To carry its burden, RMC must offer proof beyond unverified allegations in the pleadings. Strahan v. Roughead, No. 08-cv-10919-MLW, 2010 WL 4827880, at *10 (D. Mass. Nov. 22, 2010) (citing Palmer v. Braun, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001)); see also Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2949 (2d. ed. 1995). Affidavits are the typical

vehicle of proof in preliminary injunction proceedings. Wimber v. Dept. of Social and Rehabilitation Servs., No. 94-4042-SAC, 1994 WL 192039, at *5 (D. Kan. Apr. 13, 1994).

Here, RMC has submitted the affidavit of its counsel, John M. Deith. See Docket No. 4. The affidavit attaches a number of documents, including the Agreement, several orders issued in the arbitration proceeding, and excerpts of Theriault's deposition. In addition, RMC submitted the affidavit of Ronald Wheet, its Chief Executive Officer and Chairman. See Docket No. 46. However, the affidavits are thinly supported, abbreviated and conclusory and do not address all of RMC's allegations in its unverified Petition. For example, RMC alleges that Theriault continually wrote to RMC, falsely advising that his companies were production ready and that his investors were demanding performance from RMC. These allegations have no support in the affidavits. Other allegations, such as MIG's use of an unapproved manufacturer also have no support in any of the affidavits. Mem. at 5.

Moreover, nothing in the record supports a likelihood of success on the merits with respect to Respondents Vita S. Theriault, Darius R. Theriault, Raminda Theriault and John Gannick (collectively, the "Individual Respondents"). In determining whether RMC is likely to succeed on the merits of its claims, the issue is not only whether RMC is likely to succeed on its breach of contract, rescission and restitution claims generally but also whether it will collect against the Individual Respondents. See M.B. Int'l W.W.L, 2012 WL 3195761 at *11. The only allegations against the Individual Respondents is that they were officers, directors, or employees of the corporate Respondents. Petition, ¶¶ 9-11 and Ex. A thereto. The mere fact that a person is a corporate officer or director of a corporation does not make him or her liable for corporate debts, contracts, or torts of the corporation. BPS, Inc. v. Worthy, 608 S.E.2d 155, 160 (S.C.

App. 2005); Olin Mathieson Chemical Corp. v. Planters Corp., 114 S.E.2d 321, 327 (S.C. 1960). RMC has not alleged, let alone provided any evidence, that the Individual Respondents were personally involved in any of the transactions at issue or were engaged in any fraud along with Theriault. Accordingly, RMC has not shown a likelihood of success on the merits against the Individual Respondents.[12]

2. Other Factors

Having found that RMC has failed to show a likelihood of success on the merits of its claims, the Court need not go further in its analysis. However, the Court makes the following observations.

First, irreparable harm typically exists where a party has no adequate remedy at law. Charlesbank Equity Fund II, 370 F.3d at 162. Here, RMC seeks to recover money damages. However, in the context of a motion to freeze assets, a court may find irreparable harm if the plaintiff provides strong evidence demonstrating that the defendant may dissipate or conceal assets. Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 31 (1st Cir. 2005). Here, RMC has provided strong evidence that Theriault and MIG, and perhaps some of the other corporate Respondents, have engaged in dissipation of assets. RMC has not provided any evidence, however, that the Individual Respondents have any involvement in dissipation of assets.

[12] RMC's request for a preliminary injunction against the corporate Respondents (other than Theriault and MIG), although slightly stronger, is not without problems. RMC has provided some evidence that the money paid to MIG may have flowed to the other corporate entities and that Theriault controlled all of the corporate Respondents. See, e.g., 4/16/12 Theriault Depo. at 43-45, 51-58, 72-77, 209-211; 4/17/12 Theriault Depo. at 280-291. There has been no clear showing, however, that the corporations are alter egos of each other. See Colleton County Taxpayers Ass'n v. School Dist. of Colleton County, 638 S.E.2d 685, 692 (S.C. 2006) (citation omitted) ("An alter ego theory requires a showing of total domination and control of one entity by another and inequitable consequences caused thereby.").

Finally, the Court concludes that a balancing of interests also weighs against the grant of a preliminary injunction in this case. The corporate Respondents will be unable to operate in the ordinary course of business if all of their assets are frozen. In addition, the scope of the requested injunction is extraordinarily broad as to the Individual Respondents because it does not make any provisions for ordinary living expenses. Given the lack of any allegations of wrongdoing by the Individual Respondents, the potential harm to the Individual Respondents significantly outweighs the harm to RMC should injunctive relief be granted.

Because RMC has failed to satisfy its burden of proving that it is likely to succeed on the merits or that the balance of hardships weighs in its favor, this Court recommends that RMC's motion for a preliminary injunction be denied.

D. Respondents' Motions To Provide Security

Respondents Richard Theriault, Vita Theriault and Ice Huts Development moved for an order approving an attachment on certain assets in lieu of RMC's request for injunctive relief. Docket Nos. 30, 35. RMC opposes the request, arguing that the properties offered as security have very little or no equity. Docket No. 36; see also Docket No. 59 at 4-5. Because RMC has not shown that it is entitled to a preliminary injunction, it appears that the Theriaults and Ice Huts Development offered the security as a response to RMC's request for injunctive relief, and the offer was rejected by RMC, the Court recommends that the District Court deny the motions without prejudice.

III. RECOMMENDATION

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that RMC's motion for a preliminary injunction (Docket No. 2) be DENIED and

Respondents Richard Theriault, Vita Theriault and Ice Huts Development's motions to provide a lien on assets sufficient to provide security (Docket Nos. 30, 35) be DENIED without prejudice.

IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge